*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2000 FED App. 0392P (6th Cir.)
File Name: 00a0392p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

GTE MIDWEST, INC.
(98-3167); BELLSOUTH
CORPORATION (98-3203),
   *Petitioners*,

U.S. WEST, INC.; BELL
ATLANTIC; MCI
TELECOMMUNICATIONS
CORPORATION; AIRTOUCH
COMMUNICATIONS, INC.
(98-3167/3203); UNITED
STATES TELEPHONE
ASSOCIATION; ALLTEL
COMMUNICATIONS, INC.; SBC
COMMUNICATIONS, INC., et al.
(98-3167),
   *Intervenors*,

   *v.*

FEDERAL COMMUNICATIONS
COMMISSION; UNITED STATES
OF AMERICA,
   *Respondents*.

Nos. 98-3167/3203

1

On Petitions for Review of an Order from the Federal
Communications Commission.
No. 97-352.

Argued:  November 2, 1999

Decided and Filed:  November 15, 2000

Before:  MARTIN, Chief Judge; DAUGHTREY, Circuit
Judge; HILLMAN, District Judge.[*]

_____

**COUNSEL**

**ARGUED:**  L. Andrew Tollin, WILKINSON, BARKER,
KNAUER & QUINN, Washington, D.C., for Petitioners. Joel
Marcus, FEDERAL COMMUNICATIONS COMMISSION,
OFFICE OF GENERAL COUNSEL, Washington, D.C., for
Respondents.  **ON BRIEF:**  L. Andrew Tollin, Craig E.
Gilmore, Robert G. Kirk, Michael D. Sulllivan,
WILKINSON, BARKER, KNAUER & QUINN, Washington,
D.C., John P. Frantz, Steven G. Bradbury, KIRKLAND &
ELLIS, Washington, D.C., William P. Barr, Ward W. Wueste,
Jr., Washington, D.C., M. Edward Whelan III, GTE
SERVICE CORPORATION, Washington, D.C., William B.
Barfield, Jim O. Llewellyn, BELLSOUTH CORPORATION,
Atlanta, Georgia, M. Robert Sutherland, BELLSOUTH
TELECOMMUNICATIONS, INC., Atlanta, Georgia, for
Petitioners.    Carl  D.  Lawson,  FEDERAL
COMMUNICATIONS  COMMISSION,  OFFICE  OF
GENERAL  COUNSEL,  Washington,  D.C.,  Robert  J.
Wiggers, Cathrine G. O'Sullivan, U.S. DEPARTMENT OF
JUSTICE, ANTITRUST DIVISION, Washington, D.C., for
Respondents.

_____

[*] The Honorable Douglas W. Hillman, United States District Judge
for the Western District of Michigan, sitting by designation.

---

**OPINION**

---

BOYCE F. MARTIN, JR., Chief Judge. These cases come before us on petitions for review of a final order of the Federal Communications Commission issued in response to our decision in *Cincinnati Bell Tel. Co. v. Federal Communications Commission*, 69 F.3d 752 (6th Cir. 1995). For the reasons stated below, we AFFIRM.

The Commission had jurisdiction over this matter pursuant to 47 U.S.C. §§ 154(i) and 303(r), and 5 U.S.C. § 553. We have jurisdiction to review the Commission's final order under 47 U.S.C. § 402(a) and 28 U.S.C. § 2342(l). In a prior order, the Commission concluded that all local telephone companies, including the Bell operating companies, could provide personal communications service, or "PCS," without establishing a structurally separate corporate affiliate. *See New Personal Communications Services,* GN Docket 90-314, *Second Report and Order,* 8 F.C.C.R. 7700 (1993), *recon., Memorandum Opinion and Order*, 9 F.C.C.R. 4957, *further recon., Third Memorandum Opinion and Order,* 9 F.C.C.R. 6908 (1994). At the same time, the Commission decided to maintain a pre-existing structural separation requirement for the provision of cellular service by the Bell operating companies, even though the Commission recognized that cellular service is functionally equivalent to PCS. *See id.* at 7751 n.98.

In *Cincinnati Bell*, we granted a petition for review of the order and held that the Commission's decision to retain the narrow structural separation requirement for Bell company cellular service was arbitrary and capricious in light of the Commission's conclusion that PCS could be provided directly by all local telephone companies without raising significant competitive concerns. 69 F.3d at 765-68. We remanded the order for the Commission to "determine as soon as possible

whether the structural separation requirement placed upon the Bells is necessary and in the public interest." *Id.* at 768.

The Commission issued the order at issue in this case on October 3, 1997. *See Competitive Service Safeguards for Local Exchange Carrier Provision of Commercial Mobile Radio Services,* WT Docket 96-162, *Report and Order*, 12 F.C.C.R. 15,668, *clarified, Order,* 12 F.C.C.R. 17,983 (1997) ("*Report and Order*"). The order imposes separate affiliate requirements on all local telephone companies providing commercial mobile radio services. *See id.* It applies to both Bell companies and non-Bell companies and encompasses all kinds of commercial mobile radio services, not just cellular services. *See id.* Furthermore, the order adopts regulations governing joint marketing of commercial mobile radio services and local telephone services. *See id.*

BellSouth Corporation and GTE Midwest Corporation filed these petitions for review along with several intervenors alleging that the Commission's rulemaking was arbitrary and capricious and that the Telecommunications Act of 1996 precludes the Commission from imposing regulations on joint marketing of wireless and local telephone service.

## I.

Cellular service and personal communications service are the two categories of commercial mobile radio services at issue in this case. Cellular has been commercially available since the early 1980s. Personal communications service first became available in 1993. Because every call between a wireless subscriber and a landline customer originates or terminates on the local telephone company's network, providers of cellular and PCS rely on interconnection with the facilities of local telephone companies. The Commission refers to these local telephone companies as "local exchange carriers," or "LECs."

From the onset of cellular communications, the Commission required Bell operating companies to offer their

structural separation requirements for all local exchange carriers. Furthermore, regarding the joint marketing provisions in section 601(d) of the Telecommunications Act of 1996, we defer to the Commission's interpretation of the statute.

### III.

The Commission concedes that section 601(d) of the Telecommunications Act of 1996 negates the portion of the Bell company cellular affiliate rule that barred joint marketing of wireless and other services. *See Report and Order*, 12 F.C.C.R. at 15,713. Section 601(d) of the Telecommunications Act of 1996 permits joint marketing of wireless and other services "[n]otwithstanding section 22.903 of the Commissions regulations (47 C.F.R. 22.903) [the strict cellular separation requirement] or any other Commission regulation." 47 U.S.C. § 152 note.

We review challenges to an agency's construction of its organic statute under *Chevron USA, Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842 (1984). The first step in the analysis is to determine whether Congress has directly spoken to the matter at issue. *See id.* If the Congressional intent is clear then the reviewing court must give effect to the express intent of Congress. *See id.* at 842-43. Second, "[i]f Congress has not directly addressed the issue, a reviewing court must determine whether the agency's position is 'based on a permissible construction of the statute.'" *Id.*

There are two possible interpretations of section 601(d): that Congress intended to allow joint marketing of wireless and other services notwithstanding any Commission regulation in existence when the Act became effective; or that Congress intended to allow joint marketing notwithstanding any present *or future* Commission regulation. Because the language is not conclusive and it is unclear what Congress meant when it used the phrase "any other Commission regulation" the agency's position that the phrase does not preclude further agency regulation is permissible.

### IV.

Because the Notice of Proposed Rulemaking was sufficient and the Commission's decision is supported by facts in the record, we will AFFIRM the Commission's imposition of

---

cellular service through structurally separate affiliates. Because the Bell companies held exclusive franchises for local telephone service in certain markets, this structural separation requirement was intended to prevent the Bell companies from using their power in the local telephone market to engage in anti-competitive practices in the cellular market. The Commission was concerned specifically with cross-subsidization and discriminatory interconnection.[1] By requiring the Bell companies to offer cellular service through separate affiliates, the Commission had a means to monitor their operations and thereby ensure that they were not engaging in anti-competitive practices. Unlike the Bell companies, the independent local telephone companies were not subject to the structural separation requirements in their provision of cellular services. The Commission instead relied on non-structural safeguards to protect against anti-competitive practices for these companies.

With the advent of PCS, the Commission revisited the issue of what safeguards were necessary to prevent anti-competitive practices by local telephone companies providing PCS services. The Commission concluded that non-structural safeguards were sufficient to ensure competition and that separate subsidiary requirements for *any* local exchange carrier providing PCS were not in the public interest. Although the Commission concluded that PCS and cellular services were structurally similar, the Commission declined to decide whether the structural separation requirements for the Bell companies' provision of cellular service should be repealed. In *Cincinnati Bell*, we held that the record was sufficient to require the Commission to decide whether to repeal the cellular separation requirement and remanded the matter to the Commission.

---

[1] Cross-subsidization is the misattribution of costs incurred in providing unregulated services to the provision of regulated services. Discriminatory interconnection occurs when an LEC prefers the calls of its affiliated wireless provider to interconnection with a competitor's wireless service.

After the *Cincinnati Bell* decision, Congress enacted the Telecommunications Act of 1996. Congress's stated intent was to reduce regulation and encourage competition in the industry. Among other things, the Act prescribed an extensive regulatory structure for interconnection, including requiring state commissions to ensure reasonable and nondiscriminatory prices for interconnection. The Act also abolished the system of local exchange franchises and imposed numerous obligations on the local telephone companies to encourage greater competition in the local exchange markets. Furthermore, the Act allowed Bell companies to engage in joint marketing of commercial mobile radio services and landline telephone services.

In August 1996, the Commission issued a *Notice of Proposed Rulemaking* proposing two options: keeping the separate affiliate requirement for Bell company cellular service for a period of time and then "sunsetting" the rule once a Bell company met the requirements of the Telecommunications Act for entry into the long-distance market; or replacing the rule with a new rule requiring *all* large local telephone companies to provide all commercial mobile radio services through separate affiliates. In October 1997, the Commission released the *Report and Order* at issue in this case. The Order adopts the second option.

## II.

Under the Administrative Procedure Act, this Court must "hold unlawful and set aside agency action, findings and conclusions found to be . . . arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) (1988). Under this standard, our inquiry is "'searching and careful,' yet in the last analysis, diffident and deferential." *Natural Resources Defense Council v. Securities Exch. Comm'n*, 606 F.2d 1031, 1041 (D.C. Cir. 1979) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)). Nonetheless, the agency must articulate a "rational connection between the facts found and

classifying wireless services as "incidental interLATA" services, which are exempt from the separate affiliate requirement otherwise imposed on Bell company interLATA services. *See* 47 U.S.C. § 272(a)(2)(B)(i). Second, section 601(a)(3) of the Act released AT&T from the requirement that it provide its cellular service through a separate affiliate. *See* 47 U.S.C. § 152 note. BellSouth argues that Congress sought to promote parity between AT&T and the Bell companies in the wake of the *Cincinnati Bell* decision and that Congress did not intend for the Commission to have the power to declare a new separate affiliate requirement and upset the balance that Congress had struck. *See* H.R. Conf. Rep. No. 104-458 at 198-99.

Although the Act specifies separate subsidiary requirements for certain Bell company activities and precludes joint marketing restrictions in section 601(d) (discussed in Part III, below), the Act does not otherwise limit the Commission's authority to adopt separate affiliate requirements. Section 601(c)(1) of the 1996 Act specifically states:

> NO IMPLIED EFFECT. – This Act and the amendments made by this Act shall not be construed to modify, impair, or supersede Federal, State or local law unless expressly so provided in such Act or Amendments.

47 U.S.C. § 152 note. There is no explicit indication that the Act sought to promote parity between AT&T and the Bell companies. AT&T is not a local exchange carrier and does not have bottleneck control over any local landline facilities. Exempting AT&T from the separate affiliate requirement is not contrary to the FCC's requirement that all LECs provide commercial mobile radio services through separate affiliates. If Congress had sought to preclude the Commission's ability to impose separate subsidiary requirements, it could have done so explicitly.

inexperience of AT&T and AirTouch in the wireless industry, and the continued success of the Bell companies despite the cellular structural separation requirements. These factors were rationally related to the FCC's decision. As a result, the Commission's decision was a proper exercise of discretion and we will not disturb it. We defer to the Commission's expertise, especially given the complex nature of the telecommunications industry and the agency's past regulatory actions.

BellSouth argues that the Commission failed to consider simply eliminating the requirement that Bell companies provide cellular service through separate subsidiaries. In support of this allegation, BellSouth notes that the Commission sought comment on two options in its *Notice of Proposed Rulemaking*: continuing the separation requirement for Bell companies providing cellular services until a given Bell company satisfied criteria for offering long distance services, and immediately replacing the rule with the new separate affiliate requirement for all large local telephone companies providing wireless services. However, the Commission argues that the proposed options were tentative and the Notice included only the two most likely options. Furthermore, many of the companies submitted comments arguing that the structural separation requirements should be eliminated. The commentators themselves did not believe that they were restricted to commenting only on the two alternatives proposed in the Notice. As a result, the Commission had ample evidence to consider eliminating the structural separation requirements in favor of non-structural safeguards to ensure competition in the industry. The Commission chose not to pursue that alternative and we will not substitute our judgment for that of the Commission.

Finally, BellSouth argues that the Commission's separate affiliate requirement was contrary to Congressional intent underlying the Telecommunications Act of 1996. First, BellSouth argues that Congress had the opportunity to impose a structural separation requirement and declined by

the choice made," *City of Brookings Mun. Tel. Co. v. Federal Communications Comm'n,* 822 F.2d 1153, 1165 (D.C. Cir. 1987), and must "provide something in the way of documentary support" for its action. *Cincinnati Bell*, 69 F.3d at 764. BellSouth and GTE both argue that the Commission fails to present adequate justification for the expansion of the separate affiliate requirement to all local telephone companies. Specifically, BellSouth and GTE argue that the rule is arbitrary and capricious because the FCC failed to explain why existing non-structural safeguards are insufficient, failed to consider simply eliminating the cellular separation requirement altogether, and issued a rule that was contrary to Congressional intent underlying the 1996 Act.

In the *Report and Order*, the Commission points to three justifications for its new rule. First, local telephone companies that own wireless subsidiaries have both the incentive and the opportunity to engage in anti-competitive practices. *See* 12 F.C.C.R. at 15,689. Second, increased competition in the wireless market may increase the incentive for local telephone companies to discriminate against wireless competitors requesting interconnection. *See id.* at 15,701. Third, the costs of subjecting non-Bell companies to the separate affiliate requirement do not outweigh the benefits. *See id.* at 15,699. Furthermore, the Commission argues that there is nothing novel about the separate subsidiary requirements imposed under the order. The Commission notes that it has imposed similar requirements on a number of occasions and those requirements have been upheld by several courts of appeals. *See Illinois Bell Tel. Co. v. Federal Communications Comm'n*, 740 F.2d 465 (7th Cir. 1984) (affirming a rule that forbade Bell companies after July 1, 1984, to sell or lease telecommunications equipment to their customers except through separate subsidiary corporations created for that purpose); *Computer and Communications Industry Ass'n v. Federal Communications Comm'n*, 693 F.2d 198 (D.C. Cir. 1982) (upholding regulations requiring common carriers to keep separate accounts for their regulated basic service and their "competitive" services, and ordering

that "customer premises equipment" be sold separately from basic communications service); *GTE Serv. Corp. v. Federal Communications Comm'n*, 474 F.2d 724 (2d Cir. 1973) (affirming regulations providing that no common carrier subject to the Communications Act of 1934 shall furnish data processing services to others except through a separate corporate entity which must maintain its own accounting books, operating officers, and computing equipment).

After reviewing the proceedings before the Commission, we are convinced that the Commission reasonably concluded that it could not rely exclusively on non-structural safeguards given the monopoly power of the LECs that stems from their bottleneck control over local landline infrastructure. Although the Commission noted no specific instances of anti-competitive behavior, it did cite problems with interconnection seen in other areas. Furthermore, the Commission determined that although non-LEC providers have begun competing in wireless markets, such competition is not yet sufficient to survive without close supervision from the Commission.

In the *Report and Order*, the Commission determined that all LECs have both the incentive and the opportunity to use their exclusive control of local exchange facilities to engage in anticompetitive behavior. 12 F.C.C.R. at 15,692. The Commission found that non-structural safeguards were insufficient, standing alone, to combat the possibility of interconnection discrimination. Still, the Commission determined that the strict structural separation requirements imposed on the Bell companies under 47 C.F.R. § 22.903 were more burdensome than necessary to control anticompetitive behavior. *See id.* Thus, the Commission sought to "strike a new balance" by replacing the strict separation requirement of section 22.903 with a less restrictive requirement and expanding it to cover all LECs, not just Bell companies, and all types of broadband commercial mobile radio services, not just cellular. *See id.*

In reaching this decision, the Commission determined that where there was a sufficient overlap between an LEC's landline service area and its wireless service area, the LEC had the opportunity to discriminate against unaffiliated broadband commercial mobile radio service providers. Furthermore, the Commission determined that the LECs had the incentive to discriminate against non-affiliated wireless providers, especially given increased competition in the wireless industry and the likelihood that, as customers increasingly use wireless phones for the majority of their calling, wireless services could undermine the LEC's core business, namely local landline services. *See id.* at 15701.

Furthermore, the Commission recognized that increased competition and convergence required regulatory symmetry. *See id.* at 15697. The Commission determined that the costs of expanding the requirements to all LEC wireless providers did not outweigh the benefits that improved monitoring could provide. To support this conclusion, the Commission cited the strong performance of the Bell companies under the strict structural separation requirement for cellular services. The Commission reasonably concluded that it would not be prudent to rely exclusively upon non-structural safeguards to prevent anti-competitive behavior. We will not second-guess this expert choice, nor require the FCC to point to specific instances of past abuse to justify its decision.

The Commission chose a permissible regulatory tool and set out plans for its implementation. We need not discuss the mechanical specifics of the scheme, only the factors on which the Commission relied and whether those factors are reasonably related to the rule adopted. *See Computer and Communications Industry Ass'n*, 693 F.2d at 219. The Commission considered the comments of various parties, business practices in the industry, the costs and benefits of separate affiliate requirements, and the efficacy of various structural and non-structural safeguards. Specifically, the FCC cited the LECs' exclusive bottleneck control over interconnection with local wireline service, the relative